WILLIAM H. TRAFFORD, Administrator, *v.* SAMUEL YOUNG and others.

## October Term, 1877.

INSOLVENT ESTA — TO A BILL BY THE ADMINISTRATOR TO SELL LAND, THE: HEIR IS A NECESSARY PARTY. — To a bill by the administrator of a decedent, upon a suggestion of the insolvency of the estate, to sell lands descended, for the payment of debts, the heir is a necessary party; and, if no heir, the state.

NOMINAL SLAVES — MARRIAGE — WILL. — About 1840, a colored man and complainant's intestate, both negro slaves, intermarried according to the then custom of slaves, and lived together as man and wife until his death, in 1860; in 1852, the husband bought part of the lot in controversy, and in 1854 the other part, and, with the knowledge and consent of the owners of himself and wife, caused the title to be made to white persons, in trust for him; in 1860, shortly before his death, the husband made and published a last will, attested by two witnesses, by which he devised the land to his. wife, who continued in possession of the land, claiming it under the will, until her death, in 1877; the will was never proved, and was lost unintentionally. *Held,* upon bill filed by her administrator, after suggesting the insolvency of the estate, to sell the land for the payment of debts, and to remove a cloud from the title, created by a deed executed, two months before the intestate's death, by a third person to two other persons made defendants, and under which the latter took possession after the intestate's death, that a sufficient title was shown in the intestate to sustain the bill against a. demurrer by the parties in possession.

*Colyar* and *South*, for complainant.
*East*, for defendants.

THE CHANCELLOR : — On demurrer. Susan Marble having departed this life March 30, 1877, intestate, and without issue, the complainant was, on the 14th of the next succeeding month, appointed and qualified as administrator of her estate, and has filed this bill, upon a suggestion of the insolvency of the estate, to reach, for the satisfaction of debts, a small lot of ground with the improvements thereon. The bill does not make the heirs of the intestate parties defendant, or state whether she left any heirs surviving, and these omissions are assigned as one of the causes of

demurrer. I have decided, in the case of *Trafford, Admr.*, v. *Austin and others*, in an opinion delivered at the same time with this opinion, that the personal representative of a defendant is, under our statutes, entitled, upon suggestion of the insolvency of the estate he represents to the County Court, to come into this court to subject to the satisfaction of the debts of the estate any realty, either legal or equitable, which may have descended from the deceased to his or her heirs, and, for this purpose, to remove clouds from the title; and that the only remedy of the personal representative for the latter purpose, where the heirs are passive, is in this court. But as the title to realty, whether legal or equitable, descends to the heir, the heir is, of course, a necessary party to the suit. *Elliot* v. *Patton*, 4 Yerg. 10. Unless the title of the heir be divested out of him by the decree, a purchaser of the realty would acquire no title whatever. *Estes* v. *Johnson*, 10 Humph. 223; *Whitmore* v. *Johnson*, 10 Humph. 610; *Hinckle* v. *Shadden*, 2 Swan, 46. The heir, moreover, is entitled to be heard as to the debts of the estate, having the same defences as the administrator, and others peculiar to himself. *Woodfin* v. *Anderson*, 2 Tenn. Ch. 339, and cases there cited. If there be no heir, the realty goes to the state by escheat, and the state should be made a party defendant. The demurrer, is, therefore, well taken upon this ground, and must be sustained unless the complainant will amend his bill.

I presume, however, that it is desired that I should pass upon the other causes of demurrer, so as to render further argument unnecessary. These causes turn upon the title of the intestate to the lot in controversy.

Many years ago, probably in 1840, one Edler Jones and Susan Marble, the complainant's intestate, both being negro slaves, intermarried according to the then existing usages and custom of slaves, and lived together as man and wife until his death, in 1860. Being treated with great kindness by their owners, they accumulated some money, and, on

August 21, 1852, Edler Jones bought a portion of the lot in controversy, and had the title made to Buchanan Lanier, in trust for his use and benefit; and, on November 16, 1854, he purchased the residue of the lot, and caused the same to be conveyed to Isaac M. Jones, in like trust. These purchases and conveyances were made with the knowledge and approval of the owners of Edler and Susan. In the year 1860, Edler Jones, being then in the peaceable possession of said lot, as owner, made his last will and testament in writing, signed by him, and attested by two subscribing witnesses at his request, and published it with all the forms and solemnities required by law, and thereby devised the said land in fee to the said Susan Marble, his wife, dying shortly thereafter. The will was left for safe-keeping with Buchanan Lanier, and has been accidentally and unintentionally lost or destroyed. Susan Marble took possession of the land, upon her husband's death, as devisee under his will, and, her title being recognized by the trustees to whom the land had been conveyed for the benefit of Edler Jones, and by all other persons, the probate of the will was neglected. She continued in possession of the land, under the will, until her death. At times she rented to others, and among these, to the defendants Young and wife, a part of the lot. On January 29, 1877, while the intestate was living and in possession of the land, one Tennessee Marble, the father of Young's wife, conveyed to his daughter the lot by deed, which has been duly registered; and, under this deed, Young and wife took possession of the lot after the intestate's death. The deed was made by Tennessee Marble as heir of Edler Jones, but the bill alleges that he is not such heir, and is the illegitimate son of another woman, with whom Edler Jones never lived as man and wife. The bill charges that he was induced by Young and wife to make the deed, in view of the anticipated death of the intestate, for the purpose of enabling them to take possession of the lot as they did.

The main ground of demurrer is rested upon the *status* of Edler Jones and Susan as slaves, and it is argued that. there could be no valid marriage between them ; that they could not own or transfer property, or make a will ; and, further, that no title could be acquired by possession under a will not probated according to law.    The questions. raised are nice and difficult, and some of them of the first. impression, never having been directly decided.

It was held by our Supreme Court, in *Andrews* v. *Page,* 3 Heisk. 666, that a marriage between slaves, with the assent of their owners, whether contracted in common-law form, or celebrated under our statute, always was a valid marriage in this state.    It has also been repeatedly held by the same court, that although the property of a slave was legally the property of the master, yet the master might recognize the title of the slave, and this recognition would give the latter an inchoate right, which would be perfected by relation by the subsequent freedom of the slave. *Embry* v. *Morrison*, 1 Tenn. Ch. 436, and cases there cited.. That the slave could transfer such rights of property, with the assent of the master, would be a logical deduction from these rulings.    A slave could not, perhaps, make a will *strictissimi juris*, but no reason occurs why he might not, with the assent of the master, make a particular appointment in the form and nature of a will, precisely as a married woman, who labors under the same disability (*Johnson* v. *Sharp*, 4 Coldw. 45), may, with the consent of the husband, make such an appointment.    *Henley* v. *Philips*, 2 Atk. 48 ; *Perry* v. *Gill*, 2 Humph. 218.    And as the subsequent freedom of a slave would by relation extend back to the time when his right to property accrued, so as to clothe him with a perfect title from that date, so the subsequent freedom of his appointee or devisee would equally relate to the commencement of the right, no third person acquiring intervening claims.    In this view, the instrument executed by Edler Jones as a will would operate as an

appointment in favor of his wife Susan, even if its efficacy depended upon the assent, express or implied, of the master, and no probate would be necessary, the outstanding legal title in the trustees sustaining the trust, and that legal title passing to the beneficiary as soon as the purposes of the trust were accomplished, namely, when the disability of slavery ceased. *Harding* v. *St. Louis Life Ins. Co.*, 2 Tenn. Ch. 468, and cases there cited.

The result would probably be the same if the instrument be treated as a will, though the doctrine of relation is not so easily applied. For, it was the settled rule of English law, recognized by our courts as in force in this state, that a devise of land was in the nature of a conveyance and special appointment, passing only the title of the testator at the date of publishing the will. *Brydges* v. *Duchess of Chandos*, 2 Ves. jr. 427 ; *McKinnon* v. *Thompson*, 3 Johns. Ch. 307 ; *Wynne* v. *Wynne*, 2 Swan, 407. There was no provision in England, until recently, for the probate of wills of real estate, and it was necessary, therefore, to establish their execution by proof whenever any question occurred in court involving the inquiry. *Habergham* v. *Vincent*, 2 Ves. jr. 230 ; *Anonymous*, 3 Salk. 553. It was for this reason that our act of 1784, ch. 10, sec. 6 (Code, secs. 2197–2200), made the probate of wills and attested copies evidence of the devise of real estate, with leave to any person, nevertheless, upon a suggestion of fraud in the execution of the will, to insist upon the production of the original. At common law, therefore, a devise was good without probate of the will containing it, and we have no statute to the contrary. Possession of land for the requisite time, under a devise purporting to convey a fee, is, by the very words of our Statute of Limitations, sufficient to give a good title. Code, sec. 2763 ; *Cox* v. *Peck*, 3 Yerg. 435. And, as possession under a void deed is as effective to confer title as under a valid deed (*Vance* v. *Johnson*, 10 Humph. 214 ; *Clark* v. *Chace*, 5 Sneed, 638), it would seem to follow,

logically, that possession under a duly executed will, although never admitted to probate, would be equally efficacious. Certain it is, that possession under an instrument probated as a will in common form, although subsequently the probate was set aside and the instrument found to be no will, for the length of time necessary to form the bar, gives a good title. *Rogers* v. *Winton*, 2 Humph. 178. There is nothing in *Callender* v. *Sherman*, 5 Ired. 711, in conflict with these views. There, as the judge tells us, the two papers offered as a will did not on their face profess to devise the land, there being but one witness to it; and, although in the handwriting of the deceased, it had never been proved as a will; nor was there any evidence that it had been lodged in the hands of a third person for safe-keeping, or had been found among the valuable effects or papers of the deceased, as the statute touching holographic wills required. In other words, there was neither probate to dispense with proof, nor proof to dispense with probate.

Lastly, in this connection, the lost instrument may now be set up in this suit, and probated if necessary, the claim of Young and wife being far too recent, and too insubstantial, to stand in the way.

These rulings cover all of the causes of demurrer except the assignment, which has been sustained. If the bill be amended by making the necessary parties, the defendants may refile the demurrer, and consider it overruled. If they should assign other causes of demurrer to the amended bill, they will be considered.